UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BENLOR C. RIVERA, an individual,<br>BRACE U. RIVERA, an individual,<br>NELSON M. OBENA, an individual,<br><br>           Plaintiff(s),<br><br>vs.<br><br>ALLIANZ LIFE INSURANCE<br>COMPANY OF NORTH AMERICA,<br>a foreign corporation, ALLIANZ LIFE<br>FINANCIAL SERVICES, LLC, a foreign<br>limited liability company, OSCAR<br>CORPUZ, an individual,<br><br>           Defendant(s). | Case No. 2:10-cv-2266-RLH-GWF<br><br>**O R D E R**<br>(Motion to Dismiss-#15)<br>(Joinder to Motion–#25) |

Before the Court are three motions to dismiss by each of the Defendants. The Court considers here Defendant Allianz Life Insurance Company of North America's (hereafter Allianz Life) **Motion to Dismiss the Amended Class Action Complaint for Failure to State a Claim** (#15), Plaintiff's Opposition (#28) thereto, and ALFS's Reply (#31), together with Defendant Oscar Corpuz's **Joinder** (#25) to Allianz Life's Motion to Dismiss.

BACKGROUND

Plaintiffs Benlor Rivera, Grace Rivera, and Nelson Obena each applied for an Allianz Life MasterDex 10 equity index annuity through their independent insurance agent, defendant Oscar Corpuz. Both Riveras submitted an application on May 10, 2006. Obena submitted his application on June 29, 2006. At the time of the applications, and before they were submitted, each was given a

1

Statement of Understanding (hereafter SOU). The annuities were issued by co-defendant Allianz Life Insurance Company of North America (hereafter Allianz Life) on the following dates: for Benlor Rivera, June 12, 2006; for Grace Rivera, June 16, 2006; and for Nelson Obena, July 3, 2006.

The MasterDex 10 is designed to provide policyholders with a defined stream of income payments for a minimum of ten years after accumulating value for a minimum of five years. Although MasterDex 10 policy holders benefit from market increase, annuity premiums and accumulated value are not invested directly in any equity market or individual security. Rather, account values accrue based upon a formula tied to the performance of the S&P 500 or the NASDAZ-100 equity indices, as calculated monthly. The MasterDex 10 allows policy-holders to benefit from market increases while being insulated from market downturns. That is, if the sum of the Monthly Index Rates is positive, the value is increased accordingly, but if the Monthly Index Rates is negative (*i.e.,* when the sum of the Monthly Index Rates is negative–when the market is in decline) the annuity simply does not increase, it is not reduced in value.

The basis for all the causes of action in this lawsuit is language in the SOU and language in the Policy, which Plaintiffs allege is contradictory and fraudulent. The pertinent language of the SOU is as follows:

> We [Allianz Life] capture the current value of the market index on the date you purchased your contract, as well as on each contract's "monthiversary." So if your contract is dated the seventh of the month, for example, your monthiversary will be the seventh day of every succeeding month throughout the life of the contract.
>
> Monthly returns are calculated in two steps. First, the change from the previous month's index value to the current month's index value is divided by the previous month's index value. [Second, t]his amount is then multiplied by the participation rate.

The pertinent language of the Policy is as follows:

> The Initial Index Value is the value of the Index at the end of the Last Business Day before the start of a Monthly Term.

Plaintiffs contend that the SOU is part of the Policy contract, or, as they argue in their opposition, part of the application for the Policy. Defendants contend that the SOU is clearly a summary of the policy provided to a potential applicant to assist the applicant in understanding the

Policy and part of neither the application nor the Policy.

Defendant Allianz Life is the issuer and signatory on the Policy. Defendant AFLS is a subsidiary of Allianz Life and functions as a registered wholesale broker/dealer with the Securities and Exchange Commission and the securities commissions of various states. It wholesales variable annuity products issued by Allianz Life to retail broker/deals. It does not sell to consumers. Plaintiffs did not purchase variable annuities, they purchased equity index annuities. Plaintiffs' original Complaint did not name AFLS. In their Amended Complaint, they merely added AFLS as party defendant, but did not change the allegations. They merely continue to refer to the Defendants generically as Allianz.

Plaintiffs assert six claims for relief based on the same alleged misconduct: First Claim: breach of contract; Second Claim: breach of the covenant of good faith and fair dealing; Third Claim: consumer fraud in violation of the Nevada Deceptive Trade Practices Act (hereafter NDTPA; Fourth Claim: unjust enrichment; Fifth Claim: accounting; and Sixth Claim: declaratory relief.

## DISCUSSION and ANALYSIS

### A. MOTION TO DISMISS (12(B)(6)) LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." While a pleading generally need not contain detailed allegations, it must allege sufficient facts "to raise a right to relief above the speculative level." *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not allege sufficient facts to raise a right to relief above the speculative level if it contains nothing more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Instead, in order to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. At 1949 (internal citations omitted).

3

1  In *Ashcroft v. Iqbal*, the Supreme Court provided a two-step approach for district
2  courts to apply when considering motions to dismiss. First, the court must accept as true all factual
3  allegations in the complaint. *Id.* at 1950. A court does not, however, assume the truth of legal
4  conclusions merely because the plaintiff casts them in the form of factual allegations. *Id.* at 1950;
5  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Mere recitals of the
6  elements of a cause of action, supported only by conclusory statements also do not suffice. *Iqbal*, 129
7  S. Ct. at 1949. Second, the court must consider whether the factual allegations in the complaint allege
8  a plausible claim for relief. *Id*. at 1950. "A claim has facial plausibility when the plaintiff pleads
9  factual content that allows the court to draw a reasonable inference that the defendant is liable for the
10 alleged misconduct." *Id.* at 1949. Thus, where the complaint does not permit the court to infer more
11 than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader
12 is entitled to relief." *Id*. (Internal quotation marks omitted). When the claims in a complaint have not
13 crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. *Twombly*,
14 550 U.S. at 570.

15 B. ALLIANZ'S MOTION TO DISMISS

16  This entire case hangs on Plaintiffs' claim that the SOU is part of the Policy contract;
17 that the SOU makes a promise that the value of the market index was to be captured on the date the
18 Policy contract was purchased (*i.e.*, issued), but the Policy provides that it will be calculated by the
19 index at the end of the last business day before the issuance of the Policy, which is a violation of the
20 contract as described in the SOU; that Plaintiffs relied on the representation in the SOU and would
21 not have purchased the Policy had they known the value would be established by the index value at
22 the end of the day before, making the SOU a fraudulent misrepresentation in violation of the
23 consumer fraud statute of the State of Nevada; and that they were injured by the misrepresentation
24 and Allianz Life was unjustly benefitted by the violation of the contract. There are a lot of argument
25 nuances to the foregoing, but this is essentially the crux of the case before the Court.
26 / / / /

Defendants Motion/Joinder address the fallacies of Plaintiffs' claims. First, they point out that neither Plaintiffs nor Defendants could know, or even guess, in advance, what the index value was going to be, or how the securities market was going to perform on any particular day or in any particular month or year. Thus, Plaintiffs could not have relied on a promise that the index value would be calculated on a specific day. Second, the annuity values were calculated exactly as the annuity contracts said they would be. Third, the SOUs are clearly not part of the Policy contract and, even if they were, there is no inconsistency between the SOU, which states **when** the value would be captured, and the annuity Policy, which stated **how** it would be captured. Fourth, Plaintiffs were class members of a certified class action that fully litigated to final judgment the merits of claims arising from these particular annuity purchases and in which Allianz Life prevailed. Finally, the Court notes that there are no allegations that Oscar Corpuz made any independent or separate fraudulent statements about the calculation of the index value, except as is described in the SOU, which he, as an independent broker, was obligated to provide to Plaintiffs.

For the reasons stated hereafter, the Court finds the Motion/Joinder to have merit and the case will be dismissed.

C.  THE CLAIMS OF THE COMPLAINT

FIRST CLAIM FOR RELIEF--BREACH OF CONTRACT

Plaintiffs do not allege, nor can they prove, that Allianz breached any Policy term or provision. What they allege is that the SOU is part of the contract itself. In their Opposition to this motion they attempt to shift that argument to arguing that it is part of the application, and therefore part of the Policy contract, and the Policy provision is a breach of the SOU provision. The documents on which they rely in the Amended Complaint clearly contradicts their claim.

Plaintiffs argue that the SOU was signed at the same time as the application and was submitted with the application. Thus, they contend, it must be part of the application. The Policy contract makes the application part of the contract. *Ergo*, they believe, the SOU is part of the contract. They further press upon the Court the claim that the provisions of the SOU and the Policy

1  contract are ambiguous and whether the SOU was to be part of the contract is also ambiguous and any
2  ambiguity must be resolved in favor of the policyholder or at least left to a trier of fact.

3        The Court finds no ambiguity in the language of the Policy, nor between the language
4  of the Policy and the language of the SOU.  Furthermore, the Court finds that there is no ambiguity
5  about whether the SOU is part of the application.

6        The clear purpose of the SOU (as stated in the SOU) is to provide a summary and an
7  explanation of how the annuity Policy works.  It is provided for the benefit of the prospective buyers.
8  It is clearly signed and sent with the application to assure Allianz that, by their signature, it was
9  presented to the Plaintiffs for their understanding.  The document nowhere states that it is part of the
10 application or the Policy contract.  Rather, it specifically states that it is to be sent **with** the applica-
11 tion, not as part of the application.

12       Furthermore, the Policy itself clearly identifies what is part of the Policy contract. It
13 defines the "Entire Contract" as "[t]his policy, any attached endorsements, and attached riders,  and
14 the application. . . ."  There is no mention of the SOU.  (Policies at 12)

15       In addition, the calculation for the Monthly Index Rate, which uses the Initial Index
16 Rate as its benchmark, is clearly described in the Policy.  It states that "the value of the Index at the
17 end of the Last Business Day before the start of a Monthly Term " is the crediting mechanism for
18 establishing the index rate. (Policies at 7)

19       Even if the SOU were to be considered part of the contract, there is no ambiguity
20 between the language of the two documents.  The SOU merely explains when the value will be
21 captured, *i.e.* on the date the Policy is issued.  The language of the Policy, which Plaintiffs claim
22 violates the provision of the same policy, merely describes how that is to be done.  On the day the
23 Policy is issued, the index has not been established, because it is not at the end of the day.  The index
24 is stated on the Policy.  The only index that can be used under any reasonable reading of the SOU or
25 the Policy contract, is the Initial Index Value at the end of the Last Business Day before, because it is
26 the most recent index value that has been established at the time the Policy is issued.

1    Noone knew when the Policies would be issued.  In fact, the two Rivera Policies were
2 issued on different days, although the applications were sent on the same day.  How Plaintiffs could
3 have relied on a promise to capture the index value on a specific day is beyond reason.  Furthermore,
4 when the Policies were issued, the Index Value was established precisely as the Policy contract said it
5 would be.  Thus, there was no breach of any contract provision upon which a legitimate claim can
6 be–or has been-stated, and Plaintiffs have failed to state claim upon which relief can be granted.
7 SECOND CLAIM FOR RELIEF--BREACH OF THE COVENANT OF GOOD FAITH AND
                                FAIR DEALING
8
9    To establish a claim for breach of the implied covenant of good faith and fair dealing,
10 a plaintiff must show that: (1) the plaintiff and defendant were parties to a contract; (2) the defendant
11 owed a duty of good faith and fair dealing to plaintiff; (3) the defendant breached his duty by
12 performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified
13 expectations were denied.  *See Perry v. Jordan*, 122 Nev. 455, 134 P.3d 698, 702 (Nev.2006).
14    For the reasons stated above, Plaintiffs have failed to state a claim upon which any
15 relief can be granted, because Defendant's actions did not breach a duty by performing in a manner
16 unfaithful to the purpose of the contract.  Defendant acted in compliance with the clear purpose of the
17 contract.  Furthermore, Plaintiffs' belated claims of expectations are not justified.  Claims made now,
18 that they would not have purchased the Policy if they knew the Initial Index Value at the end of the
19 Last Business Day before was what was to be used, rather than the value at the end of the day of
20 issuance, which would have been unknown when the Policy was issued, they would not have
21 purchased the policy is both unreasonable and unbelievable.
22    Furthermore, the expectations occurred before the Policy was issued and the contract
23 performed.  A party cannot breach the covenant of good faith and fair dealing before a contract is
24 formed.  *See Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir.
25 1998).
26 / / / /

Because the claims, including the documents upon which Plaintiffs base their Amended Complaint, fail to assert any rational basis for recovery, Plaintiffs have failed to state a sufficient claim upon which relief can be granted under this Claim.

### THIRD CLAIM FOR RELIEF--CONSUMER FRAUD IN VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT

The only alleged fraudulent act is Plaintiffs claim that the establishment of the Initial Index Value was done contrary to the language or promise of the SOU.  Plaintiffs argue that they relied on the promise that the Initial Index Value would be "captured" on the day the Policy was issued and not the value established at the end of the last business day before and would otherwise not have purchased there respective Policy.

First, Plaintiffs' arguments are only that, arguments.  They are not allegations of facts to support the arguments and conclusions.  The Court has held above that the SOU is not part of the contract and that the language of the SOU and the Policy are neither ambiguous nor in conflict.

Second, there are no facts, or even allegations, that Plaintiffs were led to examine the Policies because of a lone statement in the summary of the policy that the Index Value would be established on some future, unknown date.

Third, as to Defendant Oscar Corpuz, there is no allegation that he made any representation to Plaintiffs about the Initial Index Value date beyond his providing to Plaintiffs copies of the SOUs as he was required.

The Court does not find it necessary to address the question of whether this particular claim is time-barred, other than to note that it has not been provided any persuasive argument for the delay of nearly four and one-half years from the issuance of the policy to the filing of this claim, particularly when Plaintiffs were parties to a class action suit regarding these same policies which was filed in 2006 and judgment rendered in January 2010, almost a year before this suit was filed.

At any rate, Plaintiffs have failed to state a claim against either Allianz or Corpuz for committing consumer fraud in violation of the Nevada Deceptive Trade Practices Act.

FOURTH CLAIM FOR RELIEF-- UNJUST ENRICHMENT

Under Nevada law, an unjust enrichment claim is "not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *See, e.g., Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1197 (D. Nev. 2006) (quoting *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997)). " 'The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscious and justice he should not retain but should deliver to another [or should pay for]'." *Leaspartners Corp.*, 942 P.2d at 187.

There is clearly an express, written contract here, as Plaintiffs themselves allege. Plaintiffs may plead all they wish, but they cannot recover on the theory of unjust enrichment, and have alleged no facts to justify recovery under this Claim. The argument that they can seek alternative bases for recovery is without merit when the factual allegations, even under this Claim, are based upon misrepresentations about, or breach of, a written contract.

FIFTH AND SIXTH CLAIMS FOR RELIEF–ACCOUNTING and DECLARATORY RELIEF

Accounting is not a claim for relief or a cause of action, but a remedy. *Hackett v. Feeney,* No. 2:09-cv-2075-RLH-LRL, 2010 WL 1416870, at *3 (D.Nev. April 1, 2010) (holding the court need not address a claim for accounting on a motion to dismiss because it is a remedy, not a cause of action). Similarly, a request for declaratory relief is a remedy "that may be afforded to a party after he has sufficiently established and proven his claims." *Haley v. Elgen Home Lending, LP,* No. 3:10-cv-0046-LRH-RAM,  2010 WL  1006664 at *3. Accordingly, in these Counts, Plaintiffs have failed to state a claim upon which relief can be granted. This is particularly true when their other Claims  also fail to state a claim upon which relief can be granted, so no such remedies are available.

D. CLAIM PRECLUSION

Plaintiffs were class members in a class action suit in federal court in Minnesota called *Mooney v. Allianze Life Insurance Company of North America*, filed February 9, 2006, which

9

included claims about this very same Allianz Life MasterDex 10 equity index annuity policy at issue in this case. Judgment was entered in favor of Allianz Life January 29, 2010.

Allianz Life asserts a right to be protected against successive lawsuits over conduct that was, or could have been, raised in an earlier lawsuit. This right is embodied in the principles of *res judicata*, and, in particular, claims preclusion.

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 2171 (2008). For judgments in diversity cases, federal common law "incorporates the rules of preclusion applied by the State in which the rendering court sits." *Id.* At 1271 n.4; *See also Taco Bell v. TBWA Chiat/Day Inc.,* 552 Fl3d 1137, 1144 (9th Cir. 2009) (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508, 121 S. Ct. 1021 (2001)). "What issues are determined by a valid judgment was rendered." Restatement (Second of Conflicts of Law §95 (1971; *Id.* Cmt. G ("The local law of the State where the judgment was rendered will be consulted to determine whether the parties should be precluded in a subsequent action upon a different cause of action from relitigating issues that were essential to the judgment and were actually litigated and determined by the judgment.").

Because the *Mooney* court, the United States District Court for the District of Minnesota, sits in Minnesota and its jurisdiction was based on diversity, Minnesota law governs the preclusive effect of the *Mooney* judgment.

The doctrine of *res judicata* precludes re-litigating causes of action already determined in a prior action. *Nelson v. Short-Elliot-Hendrickson, Inc.*, 716 N.W.2d 394, 398 (Minn. Ct. App. 2006). *"Res Judicata* is essentially a finality doctrine which dictates that there be an end to litigation." *Dorso Trailer Sales, Inc. v. Am. Body & Trailer, Inc,* 482 N.W.2d 771, 773-774 (Minn. 1992). "A subsequent claim is barred under the doctrine of res judicata when: (1) the earlier claim involved the same claim for relief; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; and (4) the estopped party had a full and fair opportunity to litigate the matter." *Nelson*, 716 N.W.2d at 398. "Res judicata involves circumstances that give rise

to a claim and precludes a second claim for the same cause of action 'not only as to every matter which was actually litigated, but also *as to every matter which might have been litigated therein.*'" *Id.* (Emphasis added) (quoting *Hauschildt v. Beckingham,* 686 N.W. 2d 829, 840 (Minn. 2004). "Once there has been an adjudication of a dispute between parties, res judicata prevents either party from relitigating claims arising from the original circumstances, even under new legal theories." *Hauschildt*, 686 N.W.2d at 837. "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Surf & Sand, Inc. v. Gardebring*, 457 N.W. 2d 782, 786 (Minn. Ct. App. 1990) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)). It would appear that when the same set of facts give rise to both claims, *res judicata* applies even if plaintiffs choose to assert a different basis for recovery. This precludes seriatim lawsuits which require a defendant to repeatedly defend the same activity.

Both *Mooney* and this action allege fraudulent and deceptive practices in connection with the sales and marketing of the same Allianz Life annuity contracts to the same policyholders. Both claim that Allianz Life made misrepresentations or omissions in point of sale uniform marketing materials, including the SOUs. And, the MasterDex 10 annuity Plaintiffs purchased and which forms the basis for this suit, was one of the seven products at issue in *Mooney*. It is irrelevant that the *Mooney* plaintiffs pursued the case under Minnesota state fraud statutes and this suit invokes a Nevada state fraud statute. The claims of the *Mooney* plaintiffs are the exact same transactions at issue here—same purchaser, same signed application, same agent interaction, same consumer brochure, same signed Allianz Life SOU, and same policy.

A party "is not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There could be no end to litigation if such practice were permissible." *Liimatainen v. St. Louis River Dam & Improvement Co.,* 137 N.W. 1099, 1100 (Minn. 1912).

1          If a class action lawsuit "proceeds to judgment on the merits, it is contemplated that
2  the decision will bind all persons who have been found at the time of certification to be members of
3  the class." *Sosna v. Iowa*, 419 U.S. 393, 399 n.8 (1975).
4          Plaintiffs now argue that the Minnesota case addressed different issues and that the
5  Notices were inadequate to advise them of the need to pursue these particular issues. That argument
6  is unpersuasive. The Notice should, at the very least, put Plaintiffs on notice that the action, of which
7  they were class plaintiffs, had issues dealing with their very own Policy, which is named on the first
8  page of the Notice.
9          The more reasonable explanation for their inaction is that they did not consider the
10 date of the Initial Index Value to be of such importance as they now claim it to be, and, it was only
11 after they failed to recover under the theories of the Minnesota class action suit, that they would make
12 a claim under the present lawsuit, also claiming to be a class action suit.
13         The Court finds this suit to be precluded under the doctrine of claim preclusion, and
14 Plaintiffs guilty of laches in pursing their claims herein.

15 E. OSCAR CORPUZ

16         As stated above, Plaintiffs fail to state a claim against Defendant Oscar Corpuz upon
17 which relief can be granted. The claim against Corpuz is that as a sales agent (actually he was an
18 independent broker), he sold Allianz equity index annuities by representing that Allianz would
19 calculate the monthly index adjustment based on the value of the market index on the date the policy
20 was purchased. (Amended Complaint page 2). This claim misrepresents the actual language even of
21 the SOU, but that aside, there is no allegation that it was fraudulent to sell such annuities, or that he
22 knew the statements were fraudulent. The Amended Complaint says that it was Allianz Life who
23 changed the calculation, not Corpuz.
24         Plaintiffs' Amended Complaint further states that Corpuz recommended that each
25 Plaintiff invest in the MasterDex 10 equity index annuity because the product had the potential to
26 grow in value. That statement is true and Plaintiffs do not claim otherwise. They say he used the

1  Allianz Life sales materials, including the SOU, to promote the product. The materials in question are
2  those of Allianz Life, not Corpuz.  The Court has found, above, that the alleged misrepresentation is
3  in fact not a misrepresentation as evidenced by the very documents Plaintiffs present in support of the
4  claims.

5        The only conceivable Claim against Corpuz is the Third Claim for consumer fraud and
6  that is assumed, not because Corpuz is named, but the generic reference to "Defendants" is used.
7  However, because of the foregoing, it is clear that Plaintiffs have met the *Iqbal* and *Twombly*
8  requirements.  They have not alleged sufficient facts against Corpuz, of consumer fraud to state a
9  claim upon which relief can be granted.

10        In Plaintiffs' Motion to Remand, Defendants claimed that the joinder of Oscar Corpuz
11  was fraudulent and only done for the purpose of trying to destroy diversity jurisdiction.  The Court
12  found it unnecessary to address that claim in the Motion to Remand because it denied the motion on
13  other grounds.  However, given the lack of bases for making a claim against Corpuz, under the facts
14  and claims alleged by Plaintiffs, the Court finds that the joinder was fraudulent.

15        IT IS THEREFORE ORDERED that Defendant Allianz Life Insurance Company of
16  North America's **Motion to Dismiss the Amended Class Action Complaint for Failure to State a**
17  **Claim** (#15), together with Defendant Oscar Corpuz's **Joinder** (#25) are GRANTED, and this case is
18  DISMISSED.

19        Dated: June 30, 2011.

_____
**Roger L. Hunt**
**United States District Judge**

13